UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER A. REID,

Plaintiff,

v.

BMW OF NORTH AMERICA, et al.

Defendants.

CIVIL ACTION NO.

1:04-CV-1885-MHS

# ORDER

There are several motions pending before the Court. The Court's rulings are set forth below.

## Background

This is a product liability action brought by plaintiff, Christopher Reid, against BMW of North America, Bayerische Motoren Werk Aktiengelsellschaft (BMW AG) (collectively "BMW defendants"), and Does 1-100. Plaintiff contends that on July 3, 2002, while he was looking under the hood of a 1995 BMW 325i (E36 series), the radiator exploded causing boiling radiator fluid to spray onto plaintiff and permanently injuring him. Plaintiff claims that the explosion was caused by a defective radiator of which defendants were aware.

The facts relevant to the pending motions are as follows: On July 3, 2002, plaintiff was working as a mechanic at a Pep Boys Automotive Supercenter ("Pep Boys") on a customer's car when the radiator exploded. On September 16, 2002, plaintiff's counsel wrote a letter to the Pep Boys Store Manager advising Pep Boys to retain the radiator or allow plaintiff's counsel to take possession of it. On December 27, 2002, plaintiff's counsel sent a letter to defendant BMW notifying them of plaintiff's potential claim. On January 9, 2003, BMW wrote to plaintiff's counsel requesting an opportunity to inspect the vehicle and the parts.

On August 13, 2003, plaintiff's counsel sent a formal demand letter to BMW putting BMW on full notice of the incident. On October 10, 2003, BMW requested for the second time an opportunity to inspect the vehicle and parts at issue. On December 8, 2003, plaintiff's counsel informed BMW that Jeffrey Hyatt of Applied Technical Services ("ATS") had taken possession of the radiator at the request of Zurich Insurance Company ("Zurich")[1] and gave BMW Mr. Hyatt's phone number should BMW wish to contact him to inspect the part.

---

[1] Zurich is the insurance carrier for Pep Boys. ATS is Zurich's agent.



AO 72A
(Rev.8/82)

From January through May of 2004, plaintiff's counsel contacted Mr. Hyatt on several occasions to confirm that Mr. Hyatt still had the radiator and to try to obtain access to the radiator. Plaintiff's counsel was informed that he could not inspect the radiator without authorization from Zurich. Zurich never gave authorization during this time. On February 26, 2004, BMW told plaintiff's counsel that after receiving photographs of the damaged parts, BMW would then assess whether it needed to inspect the radiator.

On June 29, 2004, plaintiff filed the instant suit. On July 30, 2004, ATS shipped the radiator to Pep Boys unbeknownst to plaintiff or defendants. Over a year later on August 11, 2005, plaintiff's counsel informed BMW again that an agent for Zurich had possession of the radiator.[2]

On August 30, 2005, Zurich gave authorization to plaintiff's counsel to contact ATS and inspect the radiator. On the same day, plaintiff's counsel learned that ATS no longer had the radiator but had shipped it to Pep Boys in July of 2004. During the first week of September of 2005, after an

---

[2] In July of 2005, plaintiff's counsel mistakenly told defendants that the radiator was at plaintiff's expert's facility in North Carolina. On August 11, 2005, plaintiff's counsel advised defendants of his mistake and informed them that an agent (ATS) was holding the radiator for Zurich.



AO 72A
(Rev.8/82)

investigation and an on site search of the premises by plaintiff's counsel, plaintiff's counsel determined that Pep Boys no longer had the radiator. On September 12, 2005, BMW provided notice that it would inspect the component parts that are the subject of the lawsuit on September 20, 2005. On September 19, 2005, plaintiff's counsel notified the BMW defendants of the problem locating the radiator.

On December 6, 2005, the BMW defendants moved to dismiss plaintiff's claims because plaintiff had failed to preserve the allegedly defective radiator. Defendants argue that dismissal is the only appropriate remedy under state and federal law and that they will suffer extreme prejudice as a result of plaintiff's failure to preserve the subject radiator because it is the critical evidence in this case. Defendants also argue that plaintiff acted in bad faith in failing to preserve the subject radiator.



AO 72A
(Rev.8/82)

Discussion

I. TheBMW Defendants' Motion to Dismiss Plaintiff's Claims as Sanction for Failure to Preserve Allegedly Defective Part

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." Bridgestone/Firestone North Am. Tire, LLC v. Campbell, 258 Ga. App. 767, 768 (2002). Federal law governs the imposition of spoliation sanctions; however, the Court's opinion will also be informed by Georgia law. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). The Court is afforded considerable discretion in imposing sanctions for spoliation of evidence. Id. Dismissal is the most severe sanction the Court can impose, and the Court should only resort to this option where there is a showing of bad faith and where lesser sanctions will not suffice. Id. In determining whether dismissal is warranted, the Court must consider the following factors: "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." Id. (quoting Bridgestone/Firestone, 258 Ga. App. at 768).



AO 72A
(Rev.8/82)

Regarding the first three factors, defendants are prejudiced by not being able to inspect the subject radiator. However, this is a design defect case in which plaintiff alleges that all of certain types of radiators were defectively designed. This is not a manufacturing defect case where plaintiff would have alleged that the particular radiator that injured him had a defect not shared by all other radiators of its kind. Because of plaintiff's defect theory, defendants' need for access to the particular radiator involved is diminished, and the exact radiator that allegedly injured plaintiff is less critical. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3rd Cir. 1994); Bridgestone/Firestone, 258 Ga. App. at 769. Also, because this is a design defect case, any prejudice to defendants from the loss of the radiator may be cured by testing and examining other radiators of the same type and/or by examining photographs taken of the subject radiator. See Schmid, 13 F.3d at 80. On the other hand, in a design defect case, plaintiff must prove the existence of the design defect and that the defect caused him injury. Although defendants will suffer some prejudice in their defense on the issue of causation without the subject radiator, the Court finds that the potential for prejudice is much less due to the design defect theory of plaintiff's case. See id.



AO 72A
(Rev.8/82)

Moreover, defendants could have avoided any prejudice by contacting ATS earlier to inspect the radiator. On December 8, 2003, plaintiff provided the BMW defendants with the contact information for Mr. Hyatt at ATS so that BMW could inspect the radiator, but defendants failed to make any arrangements to do so. The BMW defendants still took no steps to inspect the radiator after plaintiff filed his lawsuit on June 29, 2004. In fact, defendants made no effort to inspect the part until September of 2005.

Regarding the issue of bad faith, the general rule in Georgia is that the Court should dismiss a case where a party has maliciously destroyed relevant evidence for the sole purpose of precluding an adversary from examining that evidence. Bridgestone/Firestone, 258 Ga. App. at 769. However, malice is not always required and dismissal may be warranted when the party is less culpable but the prejudice to the defendant is extraordinary. Id.; see also Flury, 427 F.3d at 946. In order to strike a proper balance, the Court must weigh the spoliator's culpability against the prejudice to defendant. Id.

Here, plaintiff had a duty to preserve the evidence. Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001); see also Flury, 427 F.3d at 945. Plaintiff took several steps to preserve the radiator, including notifying



AO 72A
(Rev.8/82)

Pep Boys of the pending investigation and contacting ATS on several occasions to confirm that ATS still had possession of the radiator and to attempt to gain access to it. Plaintiff could have certainly done more to preserve the radiator in order to prevent the kind of loss that occurred here, such as informing Zurich in writing that a lawsuit was pending and stressing the importance of having Zurich's agent, ATS, preserve the radiator.

However, even though plaintiff did not notify Zurich of the pending litigation in writing, Zurich was the insurance carrier for Pep Boys and should have had procedures in place to prevent such an inadvertent loss. Plaintiff's counsel put Pep Boys on notice of a claim pending, and therefore Pep Boys should have done more to preserve the evidence when ATS returned the radiator to it in July of 2004. See R.A. Seigel Co. v. Bowen, 246 Ga. App. 177, 182 (2000) (noting that where third party insurance company sold vehicle that was the subject of litigation without making any effort to find out why the car was being held, court will not condone reckless conduct by the insurance company when it is experienced in litigation and should have had procedures in place to preserve evidence).



AO 72A
(Rev.8/82)

Although plaintiff's culpability is diminished because he did not own or control the radiator, he still had an obligation to give defendants notice of access to the evidence. Silvestri, 271 F.3d at 591. Plaintiff fulfilled this duty by providing defendants the contact information for Mr. Hyatt at ATS on December 8, 2003. Cf. id. (where plaintiff did not own the vehicle but had access to it, plaintiff never gave notice of any claim to defendants or allowed them an opportunity to inspect the vehicle).

The Court finds that plaintiff did not act in bad faith or maliciously in failing to preserve the evidence. In weighing the spoliator's culpability against the prejudice to defendants, plaintiff had a duty to preserve the evidence and could have done more in this case, but he was not wholly responsible. Defendants have suffered some prejudice from the loss of the radiator but their prejudice is not wholly incurable. The scale does not tip heavily in favor of either party.

The BMW defendants rely on the Eleventh Circuit's recent decision in Flury, which concerns sanctions for spoliation of evidence. 427 F.3d 939. However, Flury is distinguishable from this case. First, Flury was a manufacturing defect case, not a design defect case, in which plaintiff alleged



AO 72A
(Rev.8/82)

that he suffered injuries as the result of the airbag in his car failing to deploy when he hit a tree. Id. at 940. Second, unlike this case, plaintiff in Flury owned the car, had it in his control, and knew the location and condition of the car for a significant amount of time following the accident. Id. at 945. Plaintiff ignored defendant's request to examine the vehicle, and plaintiff was responsible for selling the car without notifying defendant. Id. In the instant case, plaintiff provided the BMW defendants with the contact information for ATS so that defendants could make arrangements to inspect the radiator, and plaintiff was not responsible for the misplacement of the radiator. Third, only plaintiff was at fault for failing to preserve the car in Flury, while here third parties, Zurich, ATS, and Pep Boys contributed to the loss of the radiator. Id.

In Flury, the Eleventh Circuit concluded that the "extraordinary nature of plaintiff's actions coupled with extreme prejudice to the defendant warrants dismissal." Id. at 943. After reviewing the particular facts of this case and the factors above, the Court concludes that dismissal is not warranted. Unlike Flury, plaintiff did not take extraordinary actions and defendants have not suffered extreme prejudice. Instead, plaintiff could have done more to preserve the evidence and defendants are not barred from putting up a complete defense. Dismissal is an ultimate sanction which is not



AO 72A
(Rev.8/82)

justified in this case. See Bridgestone/Firestone, 258 Ga. App. at 771. Accordingly, the BMW defendants' motion to dismiss plaintiff's claims as sanction for failure to preserve allegedly defective part is denied.

After weighing all of the factors, the Court should exercise its discretion to impose sanctions which fit its findings. R.A. Seigel Co., 246 Ga. App. 182. The Court concludes that the appropriate sanction in this case is to exclude expert testimony from any expert who has examined the radiator in question first-hand. At this point, it is not entirely clear to the Court whether the parties have any expert who has examined the radiator first-hand. Nevertheless, should either party wish to produce such an expert, excluding this testimony will ensure a level playing field so that either party wishing to introduce expert testimony will have to rely on findings about the radiator made through means other than a first-hand inspection. See Bridgestone/Firestone, 258 Ga. App. at 771 (noting that the exclusion of certain evidence will hamper both plaintiff and defendant). Obviously, the parties can argue the credibility of any expert's testimony when that expert did not inspect the subject radiator. The Court does not believe that defendants suffered high prejudice from the loss of the radiator but excluding first-hand expert testimony will balance any unfair advantage that may have



AO 72A
(Rev.8/82)

resulted to plaintiff from the loss of the radiator. See R.A. Seigel Co., 246 Ga. App. 182.

II. Discovery Motions

This is not the first time the Court has had to play the role of referee in this case to resolve discovery disputes. In its Order dated November 1, 2005, the Court made it very clear that it required the parties to confer or attempt to confer in good faith before it would resolve a discovery dispute.[3] The gist of the discovery motions below is that depositions ordered to go forward by this Court have not occurred.

[3] The Court's Order dated November 1, 2005, stated the following:

The Court instructs the parties that they should confer, or attempt to confer, in good faith to resolve future discovery issues. "Confer" means that counsel converse, compare views, and deliberate in an actual meeting or conference. See Williams v. Bd. of County Comm'rs, 192 F.R.D. 698, 700 (D. Kan. 2000); Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). "Good faith" means to act without the intention to defraud or abuse the discovery process, with honesty in trying to meaningfully discuss the discovery dispute, and with faithfulness to one's obligation to secure information without court action. See id.

Finally, should any future motion concerning a discovery dispute become necessary including a motion to compel discovery, the movant must include a certification setting forth the steps and actions taken by the movant to confer, or attempt to confer, in good faith to resolve the discovery dispute. The certification should include the discovery dispute at issue, the names of the parties who conferred or attempted to confer, the manner by which these parties communicated, and the dates, times, and results of their discussions. See id. The Court will not reach the merits of any motion regarding discovery unless the movant provides such certification and has adequately conferred or attempted to confer.



AO 72A
(Rev.8/82)

First, the BMW defendants move to stay discovery until the Court ruled their motion to dismiss. The Court denies that motion as moot.

Second, the BMW defendants move to conduct certain court-ordered depositions and expert depositions in January 30-31 and February 1 of 2006. The Court also denies this motion as moot.

Third, the BMW defendants move for a protective order preventing the depositions of Axel Temmesfeld and Peter Baur from taking place on December 30, 2005. The Court denies that motion as moot. Defendants also seek leave to conduct expert depositions in February. The discovery period in this case expired on December 30, 2005, and no motion for an extension was filed. Therefore, defendants' motion is denied.

Finally, plaintiff moves to compel discovery and for sanctions, due to the BMW defendants' alleged failure to comply with the Court's November 1, 2005, Order. Specifically, plaintiff requests that the Court (1) compel defendants to immediately produce in Atlanta, Georgia, representative witnesses capable of addressing all areas of inquiry identified in plaintiff's deposition notices, (2) exclude any deposition testimony of defendants' expert,



AO 72A
(Rev.8/82)

Mr. Temmesfeld; and (3) sanction defendants for their refusal to produce certain documents. Plaintiff's motion is granted in part and denied in part as follows.

Defendants are ordered to produce for deposition in Atlanta, Georgia, representative witnesses capable of addressing all areas of inquiry identified in plaintiff's deposition notices, including BMW AG employees and Peter Baur, within thirty (30) days of the date of entry of this order.[4] As for the deposition of Peter Baur, plaintiff's counsel should make reasonable efforts not to re-ask the identical questions to which Mr. Baur provided complete responses during his deposition two years ago in a different case. However, counsel is free to cover any area in which new information is available or has been discovered, or documents have been produced, or any area in which Mr. Baur claimed during his earlier deposition that he did not have complete information.

The Court denies plaintiff's motion to exclude the testimony of defendants' expert Mr. Temmesfeld on the grounds that he was not

[4] If counsel for both sides agree, these depositions may be conducted at later date in order to accommodate counsel's and witnesses' schedules.



AO 72A
(Rev.8/82)

designated sufficiently in advance of the close of discovery. The Court notes that neither plaintiff nor defendants provided notice of their experts sufficiently early in accordance with the Local Rules. Accordingly, the Court will not exclude the testimony of Mr. Temmesfeld so long as defendants make him available for deposition at a time convenient to plaintiff's counsel within thirty (30) days of the date of entry of this order.

Defendants have now produced the disputed documents. Therefore, plaintiff's motion to compel their production is denied as moot. Since the documents were arguably protected work product, the Court will not sanction defendants for failing to produce them earlier.

Conclusion

For the foregoing reasons, the Court DENIES defendants' motion to dismiss plaintiff's claims as sanction for failure to preserve allegedly defective part [#95]; DENIES AS MOOT defendants' motion to stay discovery [#96]; DENIES AS MOOT defendants' motion to take deposition from certain deponents [#114]; DENIES IN PART AND DENIES AS MOOT IN PART defendants' motion for a protective order [#117]; GRANTS plaintiff's motion to deem plaintiff's pleadings timely filed [#123]; GRANTS IN PART AND

DENIES IN PART plaintiff's motion to compel [#125]; GRANTS plaintiff's motion for leave to file surreply brief [#141]; and DENIES defendants' motion to strike plaintiff's motion for leave to file surreply brief [#145].

IT IS SO ORDERED, this 17 day of February, 2006.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia



AO 72A
(Rev.8/82)