UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER A. REID,　　　　　　　:

　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO.
v.　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　1:04-CV-1885-MHS
BMW OF NORTH AMERICA,　　　　:
et al.,
　　　　　　　　　　　　　　　　　:
　　　　Defendants.
　　　　　　　　　　　　　　　　　:

## ORDER

There are several motions pending before the Court.　The Court's rulings are set forth below.

## Background

This is a product liability action brought by plaintiff, Christopher Reid, against BMW of North America, Bayerische Motoren Werk Aktiengelsellschaft (BMW AG) (collectively "BMW defendants"), and Does 1-100.　In his complaint, plaintiff contends that on July 3, 2002, he was a service technician at a Pep Boys Automotive Supercenter ("Pep Boys").　He had just completed replacing a thermostat in a customer's BMW 325i (E36 series).　Plaintiff alleges that while he was looking under the hood of the car

to determine why the car was overheating, suddenly and without warning, the radiator exploded causing boiling radiator fluid to spray onto him causing second and third degree burns on his arms, body, and face, as well as other serious and permanent physical and emotional injuries.  Plaintiff avers that the vehicle and its component parts, including specifically the radiator and cooling system, had a defect in the design or manufacture that existed at the time it left the BMW defendants' possession causing the radiator to explode resulting in injuries to plaintiff.  Plaintiff alleges that the BMW defendants have known for several years about the defect in the cooling system and/or radiator in the E36 series BMW which has resulted in boiling fluid spraying on numerous individuals.

Plaintiff brings a strict liability claim against the BMW defendants alleging that the vehicle and/or its component parts, including the cooling system and radiator, contained a defect in the design and/or manufacture that existed at the time it left the BMW defendants' possession. Plaintiff also brings a negligence claim alleging that the BMW defendants failed to exercise reasonable care when they inter alia designed and manufactured the vehicle and/or its component parts.  Plaintiff brings a failure to warn claim against the BMW defendants for failing to warn plaintiff and others of the danger

2

and defect of the vehicle and/or its component parts or that the vehicle and/or its component parts were dangerous when used for its intended or foreseeable purposes. Plaintiff seeks both punitive and compensatory damages for his injuries.

The subject radiator in this case is missing. Pep Boys' insurance carrier is Zurich Insurance Company ("Zurich"). Zurich had authorized Applied Technical Services ("ATS") to act as its agent and take possession of the radiator. On July 30, 2004, ATS shipped the radiator back to Pep Boys. Not until August of 2005 did counsel become aware that ATS no longer had possession of the radiator and that ATS had shipped it to Pep Boys. In September of 2005, after an investigation and on site search by counsel, Pep Boys determined that it no longer had the radiator. On February 17, 2006, the Court denied the BMW defendants' motion to dismiss for failure to preserve the allegedly defective part. Instead, the Court imposed the sanction of excluding all expert testimony from any expert who had examined the radiator first-hand. Plaintiff has designated Dr. Anand Kasbekar as his expert, and the BMW defendants have designated Dr. Axel Temmesfeld as their expert.

(Rev.8/82)

Discussion

    I. The BMW Defendants' Motion to Exclude Testimony of Dr. Anand Kasbekar

The BMW defendants move to exclude the testimony of plaintiff's expert, Dr. Anand Kasbekar, as provided in his affidavit. This affidavit was submitted by plaintiff as an exhibit in support of plaintiff's response to the BMW defendants' motion to dismiss. At this time, Dr. Kasbekar has not provided any deposition testimony or an expert report for the Court.

In this affidavit, Dr. Kasbekar explains the majority of his work is in the area of failure analysis and prevention with an emphasis on the analysis of failed plastic materials that are similar if not identical to the material which was most probably used to manufacture the radiator in this case. Dr. Kasbekar explains that he has reviewed photographs of the subject radiator and numerous warranty claims and Quality Control Information Sheets from BMW dealerships which detail the failures of numerous BMW radiator necks. He further explains that he has interviewed plaintiff and found that plaintiff's statement is consistent with his analysis of his review of the photographs. Dr. Kasbekar has also inspected several BMW radiators that failed at the upper neck and reviewed thousands of warranty claims

4

pertaining to failed BMW radiators.  Based on his testing of other BMW radiators and his review of thousands of pages of documents produced in the Croskey[1] case involving another failure of a BMW radiator neck, Dr. Kasbekar concludes that the material in the subject radiator is most probably the same material that BMW had reportedly used in all of the failed radiators.  He concludes with the following:

> Based upon my investigation to date, the provided photographs, my experience analyzing similar failed radiators and other nylon components, and my training and experience in analyzing failed plastic components, it is my opinion that the radiator design, choice of plastic material, and the lack of reinforcement and shielding directly contributed to this failure and the resulting burn injuries to Mr. Reid.

Dr. Kasbekar Aff. ¶ 13.

First, the BMW defendants move to exclude Dr. Kasbekar's testimony because the BMW defendants allege that the testimony is nothing more than speculation and conjecture due to Dr. Kasbekar's failure to actually inspect the subject radiator.  The Court has already addressed this argument when ruling on the BMW defendants' motion to dismiss.  The Court has excluded any expert testimony from any expert who has examined the radiator in question first-hand in order to create a level playing for both plaintiff and

---

[1] Croskey v. BMW, et al., No. CAFN 02-73747, pending in the United States District Court for the Eastern District of Michigan.

AO 72A
(Rev.8/82)

defendants.   Therefore, Dr. Kasbekar's inability to inspect the subject radiator is not an automatic ground for excluding his testimony.

Second, the BMW defendants argue that the Court should exclude the testimony of Dr. Kasbekar pursuant to Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1999).   The BMW defendants contend that Dr. Kasbekar's testimony is unreliable and irrelevant because he has never inspected the subject vehicle and radiator, and therefore his opinions are based on nothing more than speculation and conjecture.   Plaintiff argues in response that the BMW defendants fail to identify any problem with Dr. Kasbekar's methodology or qualifications. Plaintiff contends that Dr. Kasbekar's testimony in this case is based on numerous material and data.

The introduction of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.[2]   In <u>Daubert</u>, the Supreme Court held that Rule

---

[2] Rule 702 provides:

   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
   (continued...)

702 requires the district court to act as a gatekeeper to ensure that such evidence is "not only relevant, but reliable."  509 U.S. at 589.  Thus, to determine the admissibility of expert testimony, trial courts must consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004).

<u>Daubert</u> discussed certain specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular scientific "theory or technique." 509 U.S. at 593-94.  However, the Supreme Court emphasized that the test of reliability is "a flexible one."  <u>Id.</u> at 594. Thus, <u>Daubert</u>'s list of specific factors "neither necessarily nor exclusively applies to all experts or in every case." <u>Kuhmo Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).  Instead, the trial judge has "considerable leeway in

_____

[2](...continued)
sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably.

deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id. at 152.

Although whether a theory or technique has been tested may be a relevant consideration in some cases, in others "the relevant reliability concerns may focus upon personal knowledge or experience." Id. at 150. In a products liability case, a technical field like engineering often relies on more idiosyncratic methods of design and testing. See Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 532 (D. N.J. 2001). Therefore, it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence. See id.; see also McGee v. Evenflo Co., Inc., No. 5:02-CV-259-4(CAR), 2003 WL 23350439 at *4 (M.D. Ga. Dec. 11, 2003).

The Court concludes that Dr. Kasbekar's opinions as presented in his affidavit are sufficiently reliable under Daubert. Contrary to the BMW defendants' assertions, his opinions are not based on nothing more than speculation and conjecture but instead are based upon inter alia Dr. Kasbekar's review of photographs of the radiator, interview with plaintiff, review of thousands of documents, and his own experience analyzing similar

failed radiators. The BMW defendants' arguments lean more towards the weight of Dr. Kasbekar's testimony instead of admissibility, and therefore these arguments are more proper subjects for cross-examination or for voir dire of the witness. Accordingly, the Court denies the BMW defendants' motion to exclude expert testimony.

## II. The BMW Defendants' Motion for Summary Judgment

The BMW defendants now move for summary judgment. Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. Celotex, 477 U.S. at 323; Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to

AO 72A
(Rev.8/82)

negate his opponent's claim.  The movant may discharge his burden by

merely "'showing' -- that is, pointing out to the district court -- that there is

an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477

U.S. at 325.  After the movant has carried his burden, the non-moving party

is then required to "go beyond the pleadings" and present competent evidence

designating "specific facts showing that there is a genuine issue for trial." <u>Id.</u>

at 324.  While the court is to view all evidence and factual inferences in a

light most favorable to the non-moving party, <u>Samples v. City of Atlanta</u>, 846

F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of <u>some</u> alleged factual

dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no <u>genuine</u>

issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48

(1986) (emphasis in original).


A fact is material when it is identified by the controlling substantive

law as an essential element of the non-moving party's case. <u>Anderson</u>, 477

U.S. at 248. An issue is genuine when the evidence is such that a reasonable

jury could return a verdict for the nonmovant. <u>Id.</u> The nonmovant "must do

more than simply show that there is some metaphysical doubt as to the

material facts . . . . Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

A. Defect

With regard to plaintiff's design defect claim, the BMW defendants argue that they are entitled to summary judgment because plaintiff has failed to provide any competent expert testimony of a defect and without such testimony plaintiff's claim fails. The Court has denied the BMW defendants' motion to exclude the testimony of plaintiff's expert. Therefore, because plaintiff does have competent expert testimony on this issue, his claim does not fail on these grounds.

The BMW defendants also argue that plaintiff's defect claim must fail because he cannot offer sufficient evidence that the BMW "as sold"

proximately caused his injuries.  The BMW defendants contend that plaintiff is unable to prove that the BMW was in its designed condition, or the condition when sold, on the date of the accident and was the proximate cause of his injuries.  The BMW defendants rely on the deposition testimony of a representative from ATS[3] and an email from another ATS representative for the conclusion that there was some external damage to the radiator and possible driver neglect that could have caused the radiator failure.

Plaintiff argues in response that the BMW defendants have produced no evidence that the plastic components in the BMW radiator were changed out.  Plaintiff relies on his testimony and the affidavit of Dr. Kasbekar for the proposition that the radiator was a BMW product, it was the original equipment, and that it was undamaged and unaltered with the exception of the fractured neck that caused plaintiff's injuries.  Plaintiff argues that the testimony on which the BMW defendants rely is hearsay and inadmissible.

Whether proceeding under a theory of strict liability or negligence for his products liability claim, under Georgia law plaintiff must establish that the proximate cause of his injury was a defect which existed at the time the

---

[3] As explained supra, ATS was the agent for Zurich, Pep Boys' insurance carrier.

12

product was sold. O.C.G.A. § 51-1-11(b)(1). After the sale of the product, if any injuries occur after an alteration or replacement of the product by a third party, then those injuries cannot be the proximate cause of the manufacturer's original design. Carmical v. Bell Helicopter Textron, 117 F.3d 490, 494 (11th Cir. 1997). Plaintiff may establish proximate cause by direct or circumstantial evidence. See Chapman v. Amn. Cyanamid Co., 861 F.2d 1515, 1519 (11th Cir. 1988).

Even assuming that the testimony and emails submitted by the BMW defendants are admissible, plaintiff has come forward with specific evidence to support his claim that the BMW radiator was in the same condition on the date of sale as at the time of the accident to create a genuine issue of material fact. Specifically, plaintiff presents the affidavit of Dr. Kasbekar who states that the photographs of the subject radiator, along with the interview he conducted of plaintiff, "confirm" that this is a BMW radiator and is not an aftermarket or third party replacement part. Dr. Kasbekar Aff. ¶¶ 7, 13. Plaintiff also testified that the radiator in question was not a replacement radiator, but was the original equipment. Further, with regard to causation, Dr. Kasbekar concludes that "the radiator design, choice of plastic material, and the lack of reinforcement and shielding directly contributed to this

13

[radiator] failure and the resulting burn injuries to [plaintiff]." Dr. Kasbekar Aff. ¶ 13.  Viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has shown a genuine issue of material fact regarding whether the radiator was in the condition as sold at the time of the accident and that the radiator defect proximately caused his injuries.[4]

Next, the BMW defendants argue that plaintiff has not designated an expert to testify about the mechanism of injury or medical causation, and therefore the BMW defendants are entitled to summary judgment because no competent evidence of causation exists.  The Court agrees with plaintiff that no expert testimony is needed on the issue of medical causation because a layperson on a jury will be able to understand plaintiff's causation argument that boiling radiator fluid that came into contact with plaintiff's skin caused plaintiff's injuries.  Cf. Cherokee County Hosp. Authority v. Beaver, 179 Ga. App. 200, 204 (1986)  (explaining that a medical expert is not needed when a layperson will be able to understand questions that do not involve issues in which highly specialized expert knowledge is required).

---

[4] Plaintiff filed a supplemental response to the BMW defendants' motion for summary judgment on April 11, 2006.  Plaintiff did not seek leave of the Court to file such a supplemental response as required by the local rules, and therefore the Court has not considered this supplemental response in reaching its conclusion.  See LR, ND Ga. 56.1A.

AO 72A
(Rev.8/82)

B. Failure to Warn & Punitive Damages

The BMW defendants move for summary judgment on plaintiff's failure to warn claim and his claim for punitive damages. Plaintiff relies on other incidents involving failed BMW radiators in responding to the BMW defendants' arguments. The BMW defendants argue that these other incidents are inadmissible because plaintiff has not proved that they are substantially similar to the incident in this case.

Evidence of other incidents involving the product is admissible and relevant to the issues of notice of a defect and punitive damages. Ray v. Ford Motor Co., 237 Ga. App. 316, 317 (1999). In order for these other incidents to be admissible, under Georgia law they must be substantially similar sharing a common design, suffering from a common defect, and sharing the same causation. See Cooper Tire & Rubber Co., Crosby, 273 Ga. 454, 456 (2001); Mack Trucks, Inc. v. Conkle, 263 Ga. 539, 544 (1993). Plaintiff contends that these other incidents concern radiator neck failures in the BMW E36 series and that these radiators ruptured and spewed boiling fluid on other individuals causing severe burns and injuries. Furthermore, the BMW defendants have pointed the Court to no evidence or argument to show how these incidents are not substantially similar to the incident in this case.

15

Accordingly, the incidents to which plaintiff refers appear to the Court on their face to be substantially similar to the incident at issue in this case and are admissible.

Regarding plaintiff's failure to warn claim, the BMW defendants argue that plaintiff's failure to read the warnings on the coolant jug and warnings in the car manual prevent recovery on his failure to warn claim.  Plaintiff responds that the BMW defendants have presented no evidence that any warnings existed, and therefore plaintiff cannot be held to have read a warning that did not exist.

A manufacturer has a duty to warn of nonobvious foreseeable dangers from the normal use of its product.  Thornton v. E.I. Du Pont De Nemours and Co., Inc., 22 F.3d 284, 289 (11th Cir. 1994).  This duty to warn will arise whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product.  Chrysler Corp. v. Batten, 264 Ga. 723, 724 (1994).  A manufacturer may breach this duty when it fails to adequately communicate the warning to the ultimate user or when it fails to provide an adequate warning of the product's potential risks.  Thornton, 22 F.3d at 289. In order for a warning to be adequate, it must provide a "complete disclosure

16

of the existence and extent of the risk involved." Id. quoting Pavlides v. Galveston Yacht Basin, 727 F.2d 330, 338 (5th Cir. 1984).  Whether the manufacturer took adequate efforts to communicate a warning to the ultimate user is uniformly held a question for a jury. Thornton, 22 F.3d at 289.  Finally, in a products liability case involving a defect, in addition to proving a defect, plaintiff must prove that defendant knew or reasonably should have known of the defect and failed to provide a warning. Little v. NCR Corp., No. 1:93-CV-1555-FMH, 1995 WL 929019 at *12 (N.D. Ga. Dec. 7, 1995).

Plaintiff in his complaint alleges that the BMW defendants failed to warn him of not only the dangers in the vehicle and/or its component parts but also failed to warn him of the defect in the vehicle and/or its component parts. Plaintiff alleges that the BMW defendants had knowledge of the defect in the radiator but chose to warn no one.  Plaintiff contends that the BMW defendants had knowledge of the defect in the radiator because they received: 1) quality information sheets and hotline complaints from BMW dealers warning the BMW defendants that the radiator necks were failing; 2) between 30,000-60,000 warranty claims concerning leaking radiators specifying neck failure; 3) testing by BMW that concluded that the material

in the radiator necks was problematic and brittle; and 4) customer complaints about plastic radiators spraying boiling fluid.  Plaintiff avers that he cannot be held responsible for failing to read a warning that did not exist but that should have existed because the BMW defendants were aware of the radiator problem.

The BMW defendants have provided evidence of the owner's manual for the subject vehicle which contained warnings and dangers about the car and the radiator.  Plaintiff testified that he failed to read the warnings on the vehicle that related to the engine in any way.  However, viewing the evidence in the light most favorable to plaintiff, plaintiff contends the BMW defendants were aware of a radiator defect, but there is no evidence that the BMW defendants warned of the defect.  Therefore, plaintiff's failure to read the warning on the car manual does not necessarily entitle the BMW defendants to judgment as a matter of law because there is no evidence of any warning about the defective radiator that plaintiff could have read.  Viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether the BMW defendants knew or reasonably should have known of the dangers in the radiator and failed to provide a warning.

18

As for plaintiff's claim for punitive damages, the BMW defendants argue that they did not engage in any intentional misconduct and that the BMW defendants complied with all applicable regulatory standards thereby precluding any award of punitive damages.  Plaintiff argues in response that punitive damages are warranted because the BMW defendants had knowledge as far back as 1994 of the defect in the radiator and intentionally did nothing about it, including not addressing the issue at its safety committee meetings.  Plaintiff also argues that there is no regulatory standard or regulations by which the BMW defendants could have complied.

Punitive damages may be awarded in tort actions where there is clear and convincing evidence that the defendants' actions showed "wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  Punitive damages is usually a matter for the jury. See Chicago Hardware & Fixture Co. v. Letterman, 236 Ga. App. 21, 25 (1999).  The Court has already concluded that there is a genuine issue of material fact as to whether the BMW defendants knew of the alleged defect in the radiator and failed to warn others of it.  If the BMW defendants did know of a defect in the radiator and did nothing about it,

punitive damages may be appropriate.   In addition, even if there are applicable regulations or standards and the BMW defendants complied with such regulations, other evidence showing culpable behavior can still justify an award of punitive damages.   Welch v. General Motors Corp., 949 F. Supp. 843, 844 (N.D. Ga. 1996).   Thus, viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has presented sufficient evidence to create a genuine issue of material fact on his claim for punitive damages.   See Cochran v. Lowe's Home Center, Inc., 226 Ga. App. 417, 419 (1997). Therefore, the Court denies the BMW defendants' motion for summary judgment.

### III.  Discovery Motions

The BMW defendants move to compel the deposition of plaintiff's expert, Dr. Anand Kasbekar, and plaintiff moves for a protective order to prevent this deposition.  The Court grants in part and denies in part the BMW defendants' motion to compel the deposition of Dr. Anand Kasbekar, and the Court denies plaintiff's amended motion for a protective order. Plaintiff is ordered to produce for deposition in Atlanta, Georgia, Dr. Anand

AO 72A
(Rev.8/82)

Kasbekar, within thirty (30) days of the date of entry of this order.[5]  The
Court will not impose any sanctions at this time.

Plaintiff also moves for an emergency motion for sanctions and to
compel discovery requesting that the Court strike the BMW defendants'
answer or in the alternative, prohibit the testimony of Mr. Temmesfeld or any
other expert on behalf of BMW, because the BMW defendants have failed to
comply with the Court's Order directing them to make Mr. Temmesfeld
available for deposition. As an additional alternative, plaintiff requests that
the Court order the BMW defendants to make Mr. Temmesfeld available for
deposition in Atlanta, Georgia, within ten (10) days.  The Court ordered the
BMW defendants to produce Mr. Temmesfeld for deposition within thirty (30)
days from February 17, 2006.   The BMW defendants argue that they
complied with the Court's Order, made Mr. Temmesfeld available, and that
he traveled to Atlanta from Germany, but that plaintiff did not depose him.
The BMW defendants state that the deposition of plaintiff's expert should
proceed first and their expert second because plaintiff must present expert
testimony as part of his prima facie case and the BMW defendants' expert is

_____

[5] If counsel for <u>both</u> sides agree, this deposition may be conducted at later date in order
to accommodate counsel's and witnesses' schedules.

AO 72A
(Rev.8/82)

a rebuttal expert for plaintiff's expert.  The Court grants in part and denies in part plaintiff's amended emergency motion for sanctions and to compel discovery.   The BMW defendants are ordered to produce Mr. Axel Temmesfeld for deposition via video teleconference within thirty (30) days after the deposition of Dr. Kasbekar.[6]  The Court will not impose any sanctions at this time.

Conclusion

For the foregoing reasons, the Court DENIES defendants' motion to to exclude testimony of Anand Kasbekar [#136]; DENIES defendants' motion for summary judgment [#137]; DENIES AS MOOT defendants' motion to compel deposition of Anand Kasbekar [#155]; GRANTS IN PART AND DENIES IN PART defendants' amended motion to compel deposition of Dr. Anand Kasbekar and for Sanctions [#157]; DENIES plaintiff's motion for a protective order [#164]; DENIES AS MOOT plaintiff's emergency motion for sanctions and to compel [#170]; and GRANTS IN PART AND DENIES IN

---

[6] If counsel for both sides agree, this deposition may be conducted at later date in order to accommodate counsel's and witnesses' schedules.  If counsel for both sides agree, Mr. Temmesfeld's deposition may occur via telephone or in person; if counsel for both sides do not agree, then Mr. Temmesfeld's deposition shall occur by video teleconference.

AO 72A
(Rev.8/82)

PART plaintiff's amended emergency motion for sanctions and to compel [#171].

IT IS SO ORDERED, this \_\_\_ day of April, 2006.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia